**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BELIZE SOCIAL DEVELOPMENT LIMITED<br>Craigmuir Chambers, P.O. Box 71<br>Road Town, Tortola, British Virgin Islands<br><br>    Petitioner,<br><br>    v.<br><br>THE GOVERNMENT OF BELIZE<br>Attorney General, Attorney General's Ministry<br>New Administration Building, Belmopan, Belize<br>Central America<br><br>    Respondent. | Case No. 09 Civ. |

**PETITION TO CONFIRM FOREIGN
ARBITRATION AWARD AND TO ENTER JUDGMENT**

Petitioner Belize Social Development Limited ("Petitioner" or "BSDL"), by its undersigned attorneys, alleges as follows:

**Nature of the Proceeding**

1.     This is a proceeding pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207, to confirm a foreign arbitral award for monetary relief in accordance with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958[1] (the "New York Convention") and to have judgment entered thereon.

2.     On March 18, 2009, an arbitral tribunal of three distinguished arbitrators in London, England, rendered a unanimous final award (the "Final Award") in the case commenced by Belize Telemedia Limited, as Claimant, against the Government of Belize, as Respondent, before the London Court of International Arbitration.

---

[1] 21 U.S.T. 2157, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (1970).

3.      The Final Award granted both declaratory and monetary relief against the Government of Belize.  Petitioner seeks confirmation and enforcement of the monetary relief granted in the Final Award.

4.      A copy of the Final Award is attached as Exhibit A to the accompanying Declaration of Louis B. Kimmelman, dated November 12, 2009 (the "Kimmelman Declaration").

## Parties

5.      Petitioner is a company incorporated in the British Virgin Islands, with a registered office located at Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands.  *See* Declaration of Stephen J. Ruzika, dated November 10, 2009 (the "Ruzika Declaration") ¶ 4.  Petitioner is the assignee of the monetary relief awarded in the Final Award by deed of assignment dated March 20, 2009 (the "Assignment").  *See* Ruzika Decl. ¶ 8.  A copy of the Assignment is attached as Exhibit C to the Ruzika Declaration.

6.      Respondent the Government of Belize ("Respondent" or "GoB") is a foreign state under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq*.  The GoB's notice address is as follows: Attorney General, Attorney General's Ministry, New Administration Building, Belmopan, Belize.

## Jurisdiction and Venue

7.      This Court has subject matter jurisdiction to confirm an arbitration award against a foreign state pursuant to 28 U.S.C. § 1330(a), which states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).

8.      Under 28 U.S.C. § 1605(a)(1), the GoB is not entitled to immunity because it explicitly waived its immunity from suit with respect to its obligations under the Government Telecommunications Accommodation Agreement (the "Original Accommodation Agreement" and, as amended, the "Accommodation Agreement").  A copy of the Original Accommodation Agreement is attached as Exhibit B to the Kimmelman Decl.  Section 15.5 states:

> The Government irrevocably and unconditionally:
>
> (i)     agrees that if [Belize Telemedia Limited] brings proceedings against it or its assets in relation to this Agreement no immunity from such legal proceedings (which will be deemed to include without limitation, suit, attachment prior to judgment, other attachment, the obtaining of judgment, execution or other enforcement) will be claimed by or on behalf of itself or with respect to its assets;
>
> (ii)    waives any such right of immunity which it or its assets now has or may in the future acquire;
>
> (iii)   consents generally in respect of any such proceedings to the giving of any relief or the issue of any process in connection with such proceedings including, without limitation, the making, enforcement or execution against any property whatsoever (irrespective of its use or intended use) of any award, order or judgment which may be made or given in arbitration proceedings or related enforcement proceedings.

Kimmelman Decl., Ex. B § 15.5.  The GoB has therefore waived sovereign immunity as to this proceeding to confirm an arbitration award rendered in respect of the GoB's obligations under the Accommodation Agreement.

9.      The GoB is also not entitled to immunity because this is an action under 28 U.S.C. § 1605(a)(6) to confirm an arbitration award that is governed by a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party, the New York Convention.

10.     The Final Award is governed by the New York Convention because: (i) the award arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any disputes arising from that relationship; (iii) the agreement provided for arbitration proceedings to take place in England, a signatory to the New York Convention; and (iv) at least one of the parties is not an American citizen.  *See* 9 U.S.C. § 202; *Invista N. Am. S.À.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007).

11.     This Court also has subject matter jurisdiction to confirm an arbitral award that is governed by the New York Convention.  Subject matter jurisdiction is conferred upon this Court by Section 203 of the Federal Arbitration Act, which provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.

12.     This Court has personal jurisdiction over the GoB pursuant to 28 U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state shall exist as to every claim for relief as to which the district court has jurisdiction under 28 U.S.C. § 1330(a), where service has been made pursuant to section 28 U.S.C. § 1608.  Petitioner is serving the GoB pursuant to 28 U.S.C. § 1608.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## Facts

## The Agreement

14.     On September 19, 2005, the GoB and Belize Telecommunications Limited ("BTL") executed the Original Accommodation Agreement.[2]  *See* Kimmelman Decl., Ex. A ¶ 22.

15.     In order to improve telecommunications in Belize and better accommodate the GoB's telecommunications needs, BTL agreed in the Original Accommodation Agreement to acquire certain properties of the GoB for a total amount of 19,200,000 Belize Dollars ("BZ $"). *See* Kimmelman Decl., Ex. A ¶¶ 21-22; 34-35.

16.     In consideration of BTL's accommodations and acquisition of GoB properties, the GoB granted various covenants and undertakings in the Original Accommodation Agreement, as well as three subsequent amendments to the Original Accommodation Agreement.  *See* Kimmelman Decl., Ex. A ¶¶ 33-73.  Some of the principal obligations of the GoB included, *inter alia*: to guarantee BTL a minimum rate of return ("MROR") on its investments; to pay to BTL the amount of any difference between the MROR and the actual rate of return realized by BTL ("Shortfall"); to accord BTL certain treatment with respect to business tax; to exempt BTL from import duties on goods and equipment imported for BTL's own use; to ensure certain controls on the use of Voice Over Internet Protocol ("VoIP").  *See* Kimmelman Decl., Ex. A ¶¶ 33-73.

17.     On September 15, 2006, the entirety of BTL's business was transferred to Belize Telemedia Limited ("Telemedia").[3]  *See* Kimmelman Decl., Ex. A ¶ 11.  Thereafter, Telemedia became Belize's largest telecommunications service provider, with subscribers for telephone, cellular phone, internet, and other such services.  *See* Kimmelman Decl., Ex. A ¶ 14.

---

[2] BTL was a public company incorporated under the laws of Belize, with its principal offices located at the Esquivel Telecom Center, St. Thomas Street, Belize City, Belize.  *See* Kimmelman Decl., Ex. B § 1. BTL was dissolved in 2008.  *See* Kimmelman Decl., Ex. A ¶ 27.

[3] Telemedia is a company incorporated under the laws of Belize.

18.     Subsequent to its execution, three amendments were made to the Original

Accommodation Agreement:

- On November 21, 2005, the GoB and BTL executed a deed of amendment (the "First Amendment Deed").  The provisions of the First Amendment Deed relate to BTL's purchase of particular properties from the GoB.  *See, e.g.,* Kimmelman Decl., Ex. A ¶¶ 23, 34, 237.  A copy of the First Amendment Deed is attached as Exhibit C to the Kimmelman Declaration.

- On December 15, 2006, a second deed of amendment was executed by the GoB and BTL (the "Second Amendment Deed"). The Second Amendment Deed acknowledges the GoB's obligation to pay BTL for Shortfall amounts because BTL did not achieve the MROR specified by the Original Accommodation Agreement, acknowledges the GoB's obligations with respect to tax treatment of BTL, provides that the GoB reimburse BTL for taxes wrongfully collected, and resolves various other issues between the parties with respect to the Accommodation Agreement.  *See, e.g.,* Kimmelman Decl., Ex. A ¶¶ 46, 166, 183. A copy of the Second Amendment Deed is attached as Exhibit D to the Kimmelman Declaration.

- On January 7, 2008, the GoB and Telemedia executed the third deed of amendment (the "Third Amendment Deed").  The Third Amendment Deed specifically provides in Clause 7.1 that Telemedia assumed all of BTL's rights and obligations under the Accommodation Agreement and acknowledges that all rights of BTL under the Accommodation Agreement were transferred to Telemedia as of May 29, 2007.[4]   The Third Amendment Deed also specifies Shortfall amounts owed by the GoB to Telemedia under the Accommodation Agreement, acknowledges Telemedia's right to set off Shortfall amounts against tax liabilities, and sets forth GoB undertakings with respect to various other issues, including, *inter alia*, taxation, import duties, and the assignment to Telemedia of a certain frequency spectrum.  *See, e.g.,* Kimmelman Decl., Ex. A ¶¶ 183, 185.  A copy of the Third Amendment Deed is attached as Exhibit E to the Kimmelman Declaration.

---

[4] On May 29, 2007, the GoB passed the Belize Telecommunications Undertaking (Belize Telecommunications Limited Operators) Vesting Act of 2007.  Kimmelman Decl, Ex. A ¶ 11.  Under the provisions of the Vesting Act, all of the assets, liabilities, rights and obligations, property, files and documentation of BTL (including any rights and obligations arising under the Original Accommodation Agreement, as subsequently amended), were vested in Telemedia.  *Id.*

All three amendment deeds stipulate that, as amended, the Original Accommodation Agreement will remain in effect in its entirety.  *See* Kimmelman Decl., Ex. C ¶ 4.6;  Kimmelman Decl., Ex. D ¶ 6.2; Kimmelman Decl., Ex. E ¶ 9.2.

### The Parties Agreed to Arbitrate All Disputes

19.     The Accommodation Agreement contains a dispute resolution clause providing for final resolution of any disputes by arbitration under the Rules of the London Court of International Arbitration ("LCIA").  Section 15.2 of the Accommodation Agreement states:

> Any dispute arising out of or in connection with this Agreement including any question regarding its existence, validity or termination, which cannot be resolved amicably between the parties shall be referred to and finally resolved by arbitration under the London Court of International Arbitration (LCIA) Rules which Rules are deemed to be incorporated by reference under this Section.  There shall be 3 arbitrators.

Kimmelman Decl., Ex. B § 15.2.

20.     Section 15.4 of the Accommodation Agreement states that "[t]he seat or legal place of the arbitral proceedings shall be London, England."  Kimmelman Decl., Ex. B § 15.4.

21.     Sections 15.2 and 15.5 of the Accommodation Agreement provide that the decision of the arbitrators will be final and binding and can be enforced in any court of competent jurisdiction.  *See* Kimmelman Decl., Ex. B §§ 15.2 and 15.5.

### The GoB Breached the Agreement

22.     On February 8, 2008, a new political party came to power in Belize.  The Honorable Dean Barrow was appointed the new Prime Minister and Minister of Finance. *See* Kimmelman Decl., Ex. A ¶¶ 16, 30.

23.     The new administration denied knowledge of the Accommodation Agreement and refused to recognize Telemedia's rights set forth in the Accommodation Agreement. *See* Kimmelman Decl., Ex. A ¶¶ 16, 31.

24.     Telemedia complied with its obligations under the Accommodation Agreement. For example, pursuant to Section 5 of the Original Accommodation Agreement, as amended by Section 4 of the First Amendment Deed, BTL purchased properties from the GoB, for which it paid BZ $19,200,000 to the GoB, tendering the last payment in March 2008.  *See* Kimmelman Decl., Ex. A ¶¶ 34-35.

25.     The GoB, on the other hand, failed to comply with its obligations under the Accommodation Agreement in numerous respects.  Some of the GoB's many breaches include, *inter alia*:

- The GoB failed to make Shortfall payments that it had acknowledged were required by the Accommodation Agreement, and then refused to allow Telemedia to set off the Shortfall amounts against Telemedia's tax liabilities.  *See* Kimmelman Decl., Ex. A ¶¶ 45-54.

- The GoB refused to accept Telemedia's tax returns filed on the basis of the agreed rate under the Accommodation Agreement, and continued to send erroneous tax assessment notices.  *See* Kimmelman Decl., Ex. A ¶¶ 42-44.

- The GoB impounded Telemedia's goods that should have been exempt from import duties under the terms of the Accommodation Agreement and refused to release such goods unless Telemedia either paid import duties or paid what the GoB claimed were outstanding business taxes.  *See* Kimmelman Decl., Ex. A ¶¶ 58-62.

- The GoB failed to enact the CANTO Guidelines for VoIP as required by the Accommodation Agreement, and allowed class licensees to offer access to VoIP service providers.  *See* Kimmelman Decl., Ex. A ¶ 68.

- The GoB refused to assign to Telemedia the frequency range to which Telemedia was entitled under the Third Amendment Deed. *See* Kimmelman Decl., Ex. A ¶¶ 69-73.

**Arbitration Before the LCIA**

26.     On May 9, 2008, Telemedia invoked Section 15 of the Accommodation Agreement and submitted a Request for Arbitration to the LCIA (the "Request").  *See* Kimmelman Decl., Ex. A ¶ 5.  The Request detailed the GoB's numerous breaches of the Accommodation Agreement.

27.     Because the Accommodation Agreement did not provide for party appointment of arbitrators, Telemedia's Request suggested a procedure for the parties' nomination of arbitrators. *See* Kimmelman Decl., Ex. A ¶¶ 83-84.

28.     The GoB did not respond to Telemedia's suggested procedure to nominate arbitrators in the Request.  *Id.*

29.     As a result of the GoB's failure to respond, the LCIA appointed the members of the arbitral tribunal (the "Tribunal"), consisting of three distinguished arbitrators, pursuant to Articles 5.4 and 5.5 of the LCIA Rules.  *Id.*  The LCIA notified the GoB and Telemedia by letter, dated June 13, 2008, and by a formal notice, also dated June 13, 2008.  *Id.*  Notice was properly given under both Section 17 of the Accommodation Agreement and Article 4 of the LCIA Rules. *See* Kimmelman Decl., Ex. B § 18; LCIA Arbitration Rules, art. 4.  A copy of the notice is attached as Exhibit F to the Kimmelman Declaration.

30.     On June 17, 2008, the Chair of the Tribunal wrote to both parties setting out a schedule for Telemedia to file its Statement of the Case and for the GoB to file its Statement of Defense.  *See* Kimmelman Decl., Ex. A ¶ 85.  Under the schedule set forth by the Tribunal, the GoB's Statement of Defense was due 30 days after the date Telemedia filed its Statement of the Case.  *See* Kimmelman Decl., Ex. A ¶ 85.

31.     Telemedia filed its Statement of the Case on July 25, 2008.  *See* Kimmelman Decl., Ex. A ¶¶ 86-87.

32.     On July 28, 2008, the Chair of the Tribunal again wrote to the GoB, asking whether the GoB would need an extension of its deadline for filing the Statement of Defense and proposing that the parties schedule a procedural hearing in September 2008.  *See* Kimmelman Decl., Ex. A ¶ 87.

33.     The GoB did not reply to the Tribunal's July 28, 2008 letter.  *See* Kimmelman Decl., Ex. A ¶ 88.

34.     The GoB did not file a Statement of Defense on August 25, 2008 (or ever), despite being granted multiple opportunities by the Tribunal.  *See* Kimmelman Decl., Ex. A ¶¶ 90, 102.

35.     On August 27, 2008, Telemedia's attorneys wrote to the Tribunal, noting the GoB's apparent unwillingness to participate in the proceedings and suggesting a schedule for a hearing on the merits.  *See* Kimmelman Decl., Ex. A ¶¶ 91-93.

36.     On September 1, 2008, the Chair sent a response to both parties proposing a hearing to determine how the matter should proceed, and noting that if the GoB continued to refuse to participate, the Tribunal may have to proceed under Article 15.8 of the LCIA Rules, which provides that when a respondent fails to submit a Statement of Defense, the tribunal may proceed and make an award.  The letter was sent by international courier and required a signed delivery receipt.  *See* Kimmelman Decl., Ex. A ¶¶ 94-95.  A copy of the letter is attached as Exhibit G to the Kimmelman Declaration.

37.     Again, the GoB did not respond.  *See* Kimmelman Decl., Ex. A ¶¶ 95-101.

38.     The Tribunal issued its First Procedural Order on September 30, 2008, and sent copies to both parties.  *See* Kimmelman Decl., Ex. A ¶ 101.  In the First Procedural Order, the Tribunal gave the GoB another opportunity to submit a Statement of Defense, ordering that it be filed by October 31, 2008.  *Id.*

39.     The GoB did not respond, and never submitted any arguments or evidence to the Tribunal.  *See* Kimmelman Decl., Ex. A ¶¶ 88, 90, 102.

40.     Over the course of ten months, the arbitration proceeded and the GoB refused to participate.  Meanwhile, Prime Minister Barrow made statements in the press reflecting his awareness and views of the arbitration proceedings and of the Accommodation Agreement.  *See, e.g.*, Kimmelman Decl., Ex. A ¶¶ 102-104; Janelle Chanona, *Magistrate orders Telemedia to pay $4.6 million in back taxes within 2 weeks*, Amandala, June 27, 2008 (attached as Exhibit H to Kimmelman Declaration).  Prime Minister Barrow's comments reveal that the GoB had actual notice of the proceedings, yet refused to participate.

41.     The matter was heard by the Tribunal over three days in London, on November 19, 2008, and January 14 and 15, 2009.  *See* Kimmelman Decl., Ex. A ¶¶ 139-144.  Telemedia submitted extensive proof with respect to the GoB's breaches of the Accommodation Agreement, including six witness statements, four expert reports, and a vast amount of documentation.  *See* Kimmelman Decl., Ex. A ¶¶ 138-144.  The Tribunal also heard live testimony from two fact witnesses and one expert.  *Id.*

## The Final Arbitration Award

42.     On March 18, 2009, the Tribunal unanimously ruled in favor of Telemedia and issued its Final Award.  *See* Kimmelman Decl., Ex. A. ¶¶ 341-343.

43.     The Final Award reflects that during the arbitration the Tribunal considered at length several arguments that the GoB might have made had it chosen to participate in the arbitration.  *See* Kimmelman Decl., Ex. A ¶¶ 98, 145-176.  In particular, because of Prime Minister Barrow's public comments regarding the Accommodation Agreement and the arbitration proceedings, the Tribunal reviewed the legality of the Accommodation Agreement and whether it was binding on the GoB.  *See* Kimmelman Decl., Ex. A ¶¶ 145-176.

44.     After careful consideration of arguments that the GoB might have raised, the Tribunal found that, as a matter of Belize law, the Accommodation Agreement was legal and binding, *see* Kimmelman Decl., Ex. A ¶¶ 175-176; the GoB had violated numerous provisions of the Accommodation Agreement, *see* Kimmelman Decl., Ex. A ¶¶ 177-188; and Telemedia was entitled to relief, *see* Kimmelman Decl., Ex. A ¶¶ 189-343.

45.     The Final Award includes both declaratory and monetary relief.  *See* Kimmelman Decl., Ex. A ¶¶ 341-343.

46.     A certified copy of the Final Award was sent by the LCIA to the GoB on March 18, 2009.  A copy of the accompanying letter from the LCIA is attached to the Kimmelman Declaration as Exhibit I.

47.     On March 20, 2009, the GoB issued a press release claiming that it would not be bound by the Final Award, stating:

> The government of Belize will not be bound by any ruling of a foreign arbitral tribunal where that ruling conflicts with a position taken by Belize's superior courts.
>
> Any damages award made under the umbrella of the London Court of International Arbitration must be brought to Belize for enforcement by our Supreme Court before it can have any practical effect.  Government is completely confident that it can successfully resist any attempt at local enforcement. Indeed, that is one of the reasons government chose not to spend millions of dollars on representation before a foreign tribunal.  We will defend the national position on national soil.

A copy of the press release is attached as Exhibit J to the Kimmelman Declaration.

### Assignment to BSDL

48.     On March 20, 2009, Telemedia and BSDL executed the Assignment, whereby Telemedia assigned to BSDL the monetary portion of the Final Award, including the award for damages and costs.  *See* Ruzika Decl., Ex. C ¶¶ 1.1-1.4, Schedule 1.

49.     As a result, BSDL is entitled to enforce and receive the monetary portion of the Final Award, which is set forth in paragraphs 342 and 343 of the Final Award and is reflected in Schedule 1 of the Assignment:

> (1)     BZ $15,973,621 as the amount of the outstanding net Shortfall Amount due to the Assignor including interest at 16% per annum to 27 February 2009 and after giving effect to set-offs for Business Tax and Loan Note payments;

(2)    BZ $9,797,879 in respect of the Government of Belize's failure to apply the Agreed Rate of Business Tax including interest at 15% per annum to 27 February 2009;

(3)    BZ $1,738,777 as compensation for penalties and interest wrongly applied by the Government of Belize to 27 February 2009 following the Assignor's efforts to assert its set-off rights;

(4)    BZ $1,119,600 as compensation for loss of the use by the Assignor of the sums wrongly paid to the Government of Belize on account of Business tax, improperly assessed and interest, penalties and fees related thereto including interest at 15% per annum to 27 February 2009;

(5)    BZ $1,176,083 in respect of the Government of Belize's failure to refund General Sales Tax including interest at 15% per annum to 27 February 2009;

(6)    BZ $912,781 as compensation for sums wrongly paid to the Government of Belize by way of import duty including interest at 15% per annum to 27 February 2009;

(7)    BZ $4,696,686 as compensation for lost profits caused by the Government of Belize's breach of its VoIP obligations including interest at 15% per annum to 27 February 2009;

(8)    Simple interest on each of the above amounts at 1 to 8 [sic] inclusive from 27 February 2009 until payment in full, at the rate applied to such amount up to 27 February 2009;

(9)    BZ $2,785,937.99 in respect of the Assignor's legal costs with simple interest on such amount accruing at the rate of 8% from 18 March 2009 (being the date of the Final Award) until payment; and

(10)   £162,859.44 in respect of additional hearing expenses (or such lesser amount as may be determined to be the costs of arbitration) with simple interest on such amount accruing at the rate of 8% from 18 March 2009 (being the date of the Final Award) until payment.

13

*See* Ruzika Decl., Ex. C, Schedule 1.

50.      On March 30, 2009, Telemedia's counsel faxed a letter to the GoB in which it notified the GoB that the monetary relief had been assigned to BSDL.  A copy of the letter is attached as Exhibit K to the Kimmelman Declaration.

51.      The GoB has not made any payment to BSDL.  *See* Ruzika Decl. ¶ 10.

### Expropriation of Telemedia

52.      In late August 2009, the GoB began taking steps to expropriate Telemedia from its rightful shareholders, and on August 24, 2009, the GoB  introduced a bill in the Belize National Assembly, the aim of which is to allow the GoB to take possession of Telemedia.  *See Unconstitutional and unlawful takeover of Telemedia by GOB*, Belize Channel 5 News, August 24, 2009.  A copy of this news report is attached to the Kimmelman Declaration as Exhibit L.

53.      The GoB took control of Telemedia on August 25, 2009.  *See New BTL Board Assumes Control*, Belize Channel 7 News, August 25, 2009, a copy of which is attached to the Kimmelman Declaration as Exhibit M.

### CLAIMS FOR RELIEF
### (9 U.S.C. § 207)

### First Claim for Relief
### (Confirmation of the Award's Monetary Relief)

54.      Petitioner repeats and realleges each and every allegation contained in paragraphs 1 through 53, above, inclusive, and incorporates them herein by reference.

55.      The United States is a contracting party to the New York Convention, subject the reciprocity reservation set forth in Article I of the New York Convention.

56.      The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act.

57.     The Final Award is governed by the New York Convention because it was rendered in England, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act.  *See* 9 U.S.C. § 202.

58.     The Federal Arbitration Act provides that the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

59.     None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention apply to the Final Award.

60.     Therefore, the Final Award should be confirmed pursuant to 9 U.S.C. § 207 and judgment in United States dollars should be entered for the monetary relief awarded by the Tribunal.

**Second Claim for Relief**
**(Prejudgment Interest on Amounts Due under the Award)**

61.     Petitioner repeats and realleges each and every allegation contained in paragraphs 1 through 60, above, inclusive, and incorporates them herein by reference.

62.     The Final Award includes interest on sums owed up to February 27, 2009.

63.     The Final Award provides that Petitioner is entitled to simple interest on the amounts set forth in paragraph 342 of the Final Award from February 27, 2009, to the date of payment, at the rates specified in subparagraph 342(8). Kimmelman Decl., Ex. A ¶ 342; Ruzika Decl., Ex. C, Schedule 1.

64.     The Final Award provides that Petitioner is entitled to simple interest on the amounts set forth in paragraph 343 of the Final Award from March 18, 2009, to the date of payment, at the rates specified in subparagraphs 343(1) and 343(2).  Kimmelman Decl., Ex. A ¶ 343; Ruzika Decl., Ex. C, Schedule 1.

65.     Therefore, the Court should award Petitioner prejudgment interest on all amounts awarded under the Final Award from the respective dates specified in the Final Award until the entry of judgment at the rates specified in paragraphs 342 and 343 of the Final Award.

**WHEREFORE**, Petitioner respectfully requests an order:

(a)     confirming the monetary relief granted in the Final Award and entering judgment in favor of Petitioner and against Respondent in accordance with the Final Award in United States dollars;

(b)     awarding prejudgment interest, from the dates specified in paragraphs 342 and 343 of the Final Award to the date of entry of a judgment confirming the Award, at the rates specified in paragraphs 342 and 343 of the Final Award;

(c)     granting such other and further relief as the Court deems just and proper.

Dated:   Washington, D.C.
        November 16, 2009

Respectfully submitted,

By: _____

K. Chris Todd (D.C. Bar 284455)
Joseph S. Hall (D.C. Bar 475057)
KELLOGG, HUBER, HANSEN, TODD,
    EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  202-326-7900
Fax:  202-326-7999

Louis B. Kimmelman
Dana C. MacGrath
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  212-610-6300
Fax:  212-610-6399
benno.kimmelman@allenovery.com
dana.macgrath@allenovery.com

*Counsel for Petitioner*
*Belize Social Development Limited*