**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BELIZE SOCIAL DEVELOPMENT LIMITED,** | ) ) ) |
| **Petitioner** | ) |
| **v.** | ) Case No. 1:09-cv-02170-RJL ) |
| **GOVERNMENT OF BELIZE,** | ) ) |
| **Respondent.** | ) ) |

**RESPONDENT GOVERNMENT OF BELIZE'S MOTION**
**FOR LEAVE TO CONDUCT LIMITED DISCOVERY**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant the Federal Rules of Civil Procedure and the Local Rules of this Court,

Respondent the Government of Belize ("GOB") respectfully submits this motion for leave to

conduct discovery on the specific issues described below.[1]

**INTRODUCTION**

Petitioner Belize Social Development Limited ("BSDL") has consistently tried to portray

this case as a simple request to confirm an arbitration award.  But it is not.  BSDL's petition

presents numerous questions of fact that go to the enforceability of the subject arbitration award,

rather than the merits of the underlying arbitration, and are therefore subject to fact discovery.

Said discovery is necessary in order for GOB to be able to fully defend this proceeding.

First, as discussed in GOB's Motion to Dismiss the Petition and supporting documents,

the Accommodation Agreements that contain the arbitration clause under which the award at

issue herein was made are void *ab initio* for the several reasons set forth in the Motion to

---

[1]     Pursuant to Local Civil Rule 7(m), counsel for the GOB discussed this motion with counsel for Petitioner via telephone on January 10, 2013.  As a result of that conversation, counsel for the GOB understands that Petitioners intend to oppose this motion.

Dismiss and related filings, including because they were secret agreements between the former Prime Minister of Belize and Belize Telemedia Limited ("BTL") that are repugnant to the laws, Constitution, public policy, and even sovereignty of Belize. In light of the illegal secrecy provision contained in the agreements, as well as, the secrecy otherwise surrounding them, the GOB has limited information regarding the circumstances surrounding the creation of the Accommodation Agreements. GOB believes that discovery of such information will shed further light on the invalidity and illegality of the agreements and will provide further support for the fact that such agreements are void *ab initio*. Such discovery would also shed light on the involvement of Lord Michael Ashcroft and would provide further factual support for the GOB's position that this is a political controversy that should be adjudicated in Belize, and not in the courts of the United States.

Second, the alleged assignment of the arbitration award presents factual questions that also require discovery. As set forth in the Motion to Dismiss and related fillings, the alleged assignment is invalid for several reasons, including, but not limited to, because: (1) the Accommodation Agreements only permit a complete assignment of all rights and obligations and do not allow the assignment of only the payment portion of an award; and (2) because the Accommodation Agreements only allow for an assignment to an entity that is wholly owned by BTL, but, as set forth in the Motion to Dismiss and related filings, the assignment was made in contravention of that requirement because BSDL claims that BTL distributed all of the BSDL shares to its own shareholders on the same day that BSDL was formed. In that regard, after the GOB assumed control over BTL, BTL appointed a new director to BSDL, who counsel for BSDL refuses to recognize. There is now also a dispute over who controls BSDL and whether BSDL can even bring this proceeding, including regarding whether counsel that has appeared herein is even authorized to proceed on its behalf. As such, the GOB is entitled to discovery on

these issues. Discovery regarding the circumstances surrounding the assignment, formation and ownership of BSDL, and alleged distribution of BSDL shares, will provide further factual support for the GOB's position that the assignment was invalid and that BSDL does not have any standing to seek enforcement of the award.

The GOB also seeks discovery regarding the claims of Dunkeld International Investment Ltd. ("Dunkeld") over the arbitration award.  Dunkeld appears to be controlled by the same person, Lord Michael Ashcroft, as BSDL was originally controlled by, and it has been represented by BSDL's counsel in this case.  Dunkeld is a necessary and indispensable party to this case because it has claimed an interest in the subject arbitration award and its presence is therefore required in order to afford complete relief among the existing parties, as well as, to mitigate the risk of double, multiple or inconsistent judgments against the GOB under Rule 19(a).  The relationship between Dunkeld, BTL and BSDL, however, is unknown to the GOB. GOB believes that discovery regarding this issue will shed further light on the status of Dunkeld vis-à-vis BTL and BSDL, and whether its absence compels dismissal for failure to join such an indispensable party pursuant to Rule 19(b).

## **BACKGROUND**

The basic background of this case has been extensively briefed.  In the interests of efficiency and convenience, the GOB will review only the facts relevant to the instant motion.

In 2005, the former Prime Minister of Belize executed an agreement for the provision of telecommunications services with a Belizean company called Belize Telecommunications Limited ("BTL").  *See Belize Social Dev. Ltd. v. Government of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012).  This Accommodation Agreement, which, as set forth in more detail in the Motion to Dismiss and related filings, is repugnant to the laws, Constitution, public policy, and even

sovereignty of Belize, was kept secret because it was entered into without any regard for the national interest and for the benefit of a private party at the expense of the Belizean public.

When a new Belizean Prime Minister took office in 2008, he brought the secret agreement to light and declared it invalid under Belize law, the Belize Constitution and the public policy of Belize. BTL thereafter initiated arbitration under the invalid Accommodation Agreement over the objection of and without participation by the GOB. On March 18, 2009, an arbitration panel in London ruled that BTL was entitled to a millionaire arbitration award of 38 million Belize dollars. Two days later, BTL purported to assign only the monetary portion of the award (despite the fact that the Accommodation Agreement requires a complete assignment of all rights and obligations under the agreement and does not allow for such a partial assignment) to newly created BSDL, a company incorporated in the British Virgin Islands, apparently for the sole purpose of becoming the assignee of the award, and as part of an artifice to avoid the jurisdiction of the courts of Belize.

While BSDL was busy orchestrating the illegal transfer of an arbitration award that was procured under an invalid agreement, beginning in June 2009, counsel for BSDL also wrote to the GOB on behalf of Dunkeld International Investments Ltd. ("Dunkeld"), which was identified in the letter as "an investor who has an interest in [BTL]." Docket No. 15-9, Declaration of Gian C. Ghandi ("Ghandi Decl."), Ex. 4. In that letter, Dunkeld threatened to take legal action if the GOB acted to nationalize BTL. On August 25, 2009, the GOB exercised its sovereign power by enacting legislation that granted it control over telecommunications in Belize, including acquisition of 94% of the shares of BTL. *Id.* ¶¶ 5-6 & Exs. 1-2. BSDL instituted the present proceeding on November 17, 2009. *See* Docket No. 1, Petition. Dunkeld's and BSDL's counsel also continued to communicate with the GOB on behalf of Dunkeld, claiming that the GOB had violated a Bilateral Treaty between Belize and the United Kingdom. *See id.*, Exhs. 5-8.

BSDL's petition to confirm the arbitration award that BTL purportedly assigned to it was stayed on October 18, 2010.  When BSDL appealed that stay, the Court of Appeals determined that issuance of a writ of mandamus was appropriate, and remanded the case for further proceedings not inconsistent with its opinion.

## ARGUMENT

Numerous courts, including this one, have held that "discovery in a post-arbitration judicial proceeding to confirm or vacate is governed by the Federal Rules of Civil Procedure, but is available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (citing, among other cases, *I.A.M. Nat'l Pension Fund Benefit Plan A v. Allied Corp.*, 97 F.R.D. 34, 36 (D.D.C. 1983)).  The decision to grant post-arbitration discovery requires a "practical" inquiry, "keyed to the specific issues raised by the party challenging the award," and balancing the need for the requested information with the impact of discovery on the arbitration process.  *Id.*  Post-arbitration discovery has been permitted where a party seeks discovery regarding statements made in the pleadings.  *See, e.g.*, *Hardin Const. Group, Inc. v. Fuller Enters., Inc.*, 462 S.E.2d 130 (Ga. 1995); *Batesville Casket Co., Inc. v. United Steelworkers of Am.*, 2007 WL 4289983, at *3-*5 (E.D. Tenn. Dec. 5, 2007).

**A.      Discovery Regarding Circumstances Surrounding Negotiation and Execution of the Accommodation Agreements is Relevant to Their Invalidity.**

Under Article V(1)(a) of the New York Convention, recognition or enforcement of an arbitration award can be refused if the "agreement is not valid under the law to which the parties have subjected it . . . ."  New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 3 (June 10, 1958) ("New York Convention"), Art. V(1)(a).

As set forth in the Motion to Dismiss and related filings, the Accommodation Agreements that contain the arbitration clause under which the award at issue was made are void *ab initio* for the several reasons set forth in the Motion to Dismiss and related filings, including because they were secret agreements between the former Prime Minister of Belize and BTL that are repugnant to the laws, Constitution, public policy, and even sovereignty of Belize.  In light of the illegal secrecy provision contained in the agreements, as well as, the secrecy otherwise surrounding the agreements, the GOB has limited information regarding the circumstances surrounding the creation of the accommodation agreements.  GOB believes that discovery of such information will shed further light on the invalidity and illegality of the agreements and will provide further support for the fact that such agreements are void *ab initio*.  Such discovery would also shed light on the involvement of Lord Michael Ashcroft and would provide further factual support for the GOB's position that this is a political controversy that should be adjudicated in Belize, and not in the courts of the United States.

Because this Court should not recognize or enforce an arbitration award that is the product of an invalid arbitration agreement, discovery into the facts surrounding the creation of the accommodation agreement is "relevant and necessary to the determination of an issue raised by" BSDL's petition. *Frere*, 2000 WL 1789641, at *4; see also China Minmetals Material Export Co. Ltd. v. Chi Mei. Corp., 334 F.3d 274, 286 (3d Cir. 2003) (holding that courts applying Article V of the New York Convention must analyze the validity of the underlying agreement when a party opposing enforcement disputes the validity of the agreement and regardless of whether the arbitrator concluded that the agreement was valid).  The GOB therefore requests permission to conduct limited discovery on this issue before the Court rules on BSDL's petition.

/ / /

**B.     Discovery Regarding the Validity of the Assignment and Ownership of BSDL is Relevant to Whether BSDL has Standing.**

As noted above, BSDL was not a party to the arbitration between BTL and the GOB. Rather BSDL seeks to enforce the arbitration award as a purported assignee of the same.  A non-party to an arbitration does not have standing to enforce an award in the absence of a valid assignment.  *See I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396, 400 (8th Cir. 1986) (holding, in the context of a dispute over assignability, that "the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other").

The circumstances surrounding the purported assignment to BSDL, which is an entity that did not exist until March 20, 2009, two days after the arbitration panel rendered the award that is the subject of the present petition, is highly relevant to this dispute.  On that same day, BTL executed a "Deed of Assignment" purporting to assign its interest in only the monetary portion of the arbitration award here at issue to BSDL.  *See* Docket No. 1-19, Ruzika Decl. Ex. C, Deed of Assignment.  While the Accommodation Agreement provides that BTL is allowed to assign ***all*** of BTL's rights and obligations under the Accommodation Agreement, it does not allow for a partial assignment.  Docket No. 1-4, Kimmelman Decl. Ex. B, Accommodation Agreement § 19 (emphasis added).  However, two days after it prevailed in the arbitration proceeding, BTL purported to assign only the monetary payment portion of the arbitration award to BSDL.

In addition, the Accommodation Agreement only permits assignment of BTL's rights and obligations only to "a new subsidiary of BTL, or some other company within BTL's corporate group or under the control of BTL."  *Id*.  Perhaps in an effort to comply with this provision of the Accommodation Agreement, Paragraph 1.1 of the Deed of Assignment states that in return for

the assignment of the payment portion of the arbitration award, BSDL would issue a controlling

share of stock in BSDL to BTL.  Deed of Assignment ¶ 1.1.  It is clear, however, that BTL did

not take control of BSDL in this manner.  Rather, when the GOB acquired BTL, which it

presumed would include BTL's stock in BSDL, it was informed that BSDL's shares had been

distributed as a dividend to the BTL shareholders.  *See* Docket No. 15-2, Declaration of Claire L.

Jones ¶ 8 & Ex. 3. As discussed in the Declaration of attorney Claire L. Jones of the Ogier law

firm in the BVI (Docket No. 15-2), after it became majority-owned by the GOB, BTL exercised

its rights as owner of BSDL and named a director to replace the prior directors of BSDL under

BVI procedures.  Ogier then wrote to Allen & Overy requesting confirmation that they would

take their instructions from the new director.  On March 10, 2010, Mr. Louis Kimmelman of

Allen & Overy (counsel herein for BSDL) responded that BTL was no longer the owner of

BSDL, because BTL allegedly "distributed, by way of dividend in specie, the entire issued share

capital of BSDL to [BTL's former] shareholders on a pro rata basis on March 20, 2009."  In

other words, although the assignee of BTL under the Accommodation Agreements is required to

be owned entirely by BTL, BSDL was created and its shares distributed to the former owners of

BTL (i.e., the Lord Aschcroft parties) on the very same day.  Obviously, the requirements that

the assignee of BTL receive all rights and obligations, and be wholly owned by BTL, were

violated and the assignment is invalid.  In addition, since there is currently also a dispute about

who owns and controls BSDL, and whether Allen & Overy can even act as counsel for BSDL in

these proceedings.

       While it is clear that the alleged assignment is invalid because it is an improper partial

assignment of only the award, as opposed to all rights and obligations as required by the

Accommodation Agreement, and because it is made in favor of an entity that is not wholly-

owned or otherwise under the control of BTL, GOB believes that discovery regarding the

circumstances surrounding the alleged assignment, creation of BSDL, and purported distribution of BSDL's shares will provide further factual support for the invalidity of the assignment. The invalidity of the assignment means that BSDL lacks standing to proceed with this matter.

**C.      Discovery Regarding Dunkeld is Relevant to Whether it Is an Indispensable Party.**

Under Federal Rule of Civil Procedure 19, a person in whose absence the court cannot afford complete relief, or whose absence puts an existing party at risk of "double or multiple, or otherwise inconsistent obligations," must be joined as a party to the litigation so long as that person is subject to service of process and their presence will not deprive the court of subject matter jurisdiction. Fed. R. Civ. P. 19(a). If such joinder is not feasible, it is appropriate to dismiss the entire action. *See id.* 19(b); *Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington*, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983).

As discussed in the Motion to Dismiss at pages 43-45, an entity known as Dunkeld International Investments Ltd. ("Dunkeld") (through its counsel Allen & Overy) sent a letter to the GOB in December of 2009 claiming that Dunkeld was the beneficial owner of approximately 69% of the shares of BTL (previously expropriated by the GOB). In that letter, as a basis of its threatened claims against the GOB, Dunkeld asserts that the GOB "has not complied with [the subject] LCIA Award." Thus, it is clear that Dunkeld, a third-party, is claiming rights over the Arbitration Award. Dunkeld also asserts that the GOB "expropriated" its investment in BTL.

Dunkeld is a necessary and indispensable party in light of the fact that it has claimed an interest in the award that is the subject of this dispute. Its presence is required in order to afford complete relief among the existing parties and to mitigate the risk of double, multiple or inconsistent judgments against the GOB under Rule 19(a). The relationship between Dunkeld, BTL and BSDL, however, is unknown to the GOB. GOB believes that discovery regarding this

issue will shed further light on the status of Dunkeld vis-a-vis BTL and BSDL, and whether its

absence compels dismissal for failure to join such an indispensable party pursuant to Rule 19(b).

## CONCLUSION

For the reasons stated above, Respondent the Government of Belize respectfully asks that

if the Court decides not to dismiss BSDL's Petition, that it grant a 60-day period of discovery

under the Federal Rules of Civil Procedure into the limited questions raised above.

Dated:  January 14, 2013.

Respectfully submitted,

*/s/ Jay C. Johnson*
Jay C. Johnson (D.C. Bar # 487768)
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)
johnson.jay@dorsey.com

Juan C. Basombrio (Admitted *Pro Hac Vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
(714) 800-1405 (telephone)
(714) 800-1499 (facsimile)
basombrio.juan@dorsey.com

Counsel for Respondent
**GOVERNMENT OF BELIZE**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of January, 2013, I electronically filed the foregoing

Motion for Discovery and Incorporated Memorandum of Law with the Clerk of the Court for the

United States District Court for the District of Columbia using the CM/ECF system, which

automatically served all counsel in this case.

/s/ Jay C. Johnson
Jay C. Johnson